1
2
3
4
5
6
7
8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DENNIS MARTEL,

11          Plaintiff,                    No. CIV-S-04-0014 ALA P

12      vs.

13   CALIFORNIA DEPARTMENT
     OF CORRECTIONS, et al.,              ORDER
14              Defendants.

15   _____/

16                              **I**

17         Pro Se Plaintiff Dennis Martel brought suit against John J. Dann, Raymond L.

18   Andreasen, John W. Moor, John Baughman, and Thomas Donahue, as medical personal

19   of the California Department of Corrections, pursuant to 42 U.S.C. § 1983 for alleged

20   violations of his rights under the Eighth Amendment of the United States Constitution.

21   Mr. Martel claims that Defendants treated his medical needs with deliberate indifference.

22   Mr. Martel has moved for partial summary judgment and Defendants have filed a cross

23   motion for summary judgment.  For the reasons stated below, the Defendants' motion is

24   granted and Mr. Martel's motion is denied

25                              **II**

26         In October of 1987, Mr. Martel sustained injuries as a result of a car accident

27   where he attempted to evade a police pursuit.  He was taken to Los Angeles General

28   Hospital Jail Ward for treatment.  Doctors inserted metal plates and wires into Mr.

Martel's face to treat multiple fractures of his facial bones.  Mr. Martel was convicted of second degree murder on November 15, 1988.  He was sentenced to be imprisoned for 15 years to life.

In February of 1991, while confined at the California State Prison-Sacramento, Mr. Martel complained of limited opening of his mouth, difficulty in chewing food and head pain.  On October 24, 1991, Mr. Martel was transferred to the California Medical Facility ("CMF") for treatment.  While incarcerated at the CMF, Mr. Martel was seen by Dr. John J. Dann.  Dr. Dann diagnosed Mr. Martel with "[n]onunion of left orbital bone," and "[m]alunion of midfacial arches."  (DX B-1, pp 10-11.)  On December 13, 1991, he performed surgery on Mr. Martel to correct these problems.  The surgery entailed the removal of two bone plates along with a number of screws and the insertion of a bone plate and a twenty-four gauge wire.  On October 11, 1996, Dr. Dann again examined Mr. Martel after he complained of intermittent swelling on his left face and trismus.  Dr. Dann prescribed antibiotics, which eventually decreased Mr. Martel's discomfort.  While incarcerated at the CMF, Mr. Martel was permitted use of a cane to stabilize himself due to his tendency to have seizures.

On April 8, 1998, Mr. Martel again reported facial pain and swelling to Dr. Hon Chan, an oncologist who was treating him for Hodgkin's lymphoma.  Dr. Chan prescribed antibiotics and referred Mr. Martel to the Ear, Nose and Throat Clinic ("ENT") of the CMF.  An ENT specialist requested that Mr. Martel be evaluated by Dr. Michael P. Shaw, a maxillofacial surgeon.  Dr. Shaw evaluated Mr. Martel and concluded that two of his facial plates were failing and that there was a possible wire versus bony resorption (bone loss) secondary to infection.

On July 23, 1998, Dr. Shaw removed a maxillary reconstruction plate, a dynamic compression plate and screws.  Dr. Shaw placed Mr. Martel on antibiotics after the surgery.  However, after the surgery, Mr. Martel continued complaining of facial pain. On September 3, 1998, Mr. Martel informed Dr. Shaw that he could feel a wire under his left eye.  (DX B-1, p 56.)  Dr. Shaw found "no sign of infection / inflammation," and

noted normal healing.  Dr. Shaw ordered an X-Ray for Mr. Martel.  Based on the X-Ray results, Dr. Shaw prescribed medication for Mr. Martel to treat the infection but did not order additional surgery.

On December 30, 1998, Mr. Martel appeared before a CMF classification committee (the "Committee") for an annual review.  Thomas Donahue, a Senior Medical Technical Assistant at the CMF, was a member of the Committee, and he provided Mr. Martel's medical information to the other Committee members.  The Committee was informed by Dr. Raymond L. Andreasen, the Chief Medical Officer of the CMF, that Mr. Martel's medical needs no longer required him to be housed at the CMF.  He recommended that Mr. Martel be transferred back to an appropriate security level institution.  The Committee also received information indicating that Mr. Martel was disciplined on December 18, 1997 for battery on a peace officer.  The Committee recommended that Mr. Martel be transferred to the California Correctional Institution-Level IV ("CCI-Level IV") or the Salinas Valley State Prison-Level IV.

Mr. Martel filed an administrative appeal of the Committee's decision.  Mr. Martel contended that he continued to have chronic migraine headaches, and he needed additional treatment for Hodgkin's Disease.  (DX A-1, p.24.)  He argued that he should not be transferred out of the CMF due to these condition.  (*Id.* at 28.)  Dr. Andreasen denied both appeals because he concluded that "headaches can be managed at any institution."  Dr. Andreasen also asserted that Dr. Shaw found no need for additional facial surgery, and Mr. Martel's "Hodgkin's disease [was] in remission with no new symptoms in over a year."  (*Id.* at 26, 30.)

On February 18, 1999, Mr. Martel was transferred to the CCI-Level IV.  On September 8, 1999, Mr. Martel again complained of "facial swelling from metal in [his] face."  (DX A-1, p.66.)  As a result, Dr. John W. Moor prescribed antibiotics for Mr. Martel and ordered X-Rays of his face and sinuses.  Dr. Moor  reviewed the X-Ray results and noted that Mr. Martel's facial swelling had decreased markedly.  Dr. Moore decided to continue treating Mr. Martel with antibiotics.  Dr. Moor further concluded that

1  Mr. Martel did not need a cane because he was no longer having seizures.

2       On September 29, 1999, Mr. Martel complained of "severe face swelling." (DX

3  A-1, p. 68.) Dr. Moor examined Mr. Martel and concluded that his face was the same as

4  it had been at the previous visit. Three X-Rays were taken on the same day, and they also

5  showed "no apparent change since 9/13/99." (DX B9, p. 300.) Dr. Moor prescribed

6  Motrin, Tylenol, and a three-day "lay-in." (DX B, p. 218.)

7       On October 8, 1999, Mr. Martel filed a grievance, complaining that his facial pains

8  were improperly treated and he requested that he be seen by a maxillofacial specialist.

9  Subsequently, Mr. Martel had five visits with various doctors for the next two months.

10  Each time, the doctors prescribed additional medication. On January 4, 2000, Mr. Martel

11  submitted another grievance claiming that he had not received proper treatment for his

12  facial pains. Mr. Martel also complained that prison officials improperly denied him

13  access to batteries for his hearing aid and a cane. On February 1, 2000, Mr. Martel filed a

14  third administrative appeal with essentially the same claims.

15       These appeals were consolidated and decided by the CCI's Medical Appeals

16  Coordinator T. Griffin and Chief Deputy Warden W. J. Sullivan on March 17, 2000. The

17  decision informed Mr. Martel that medical treatment for his facial pain is ongoing. The

18  decision also informed Mr. Martel that the medical clinic where he was being seen must

19  approve his request for a cane and batteries. Dr. Moor found that Mr. Martel was walking

20  well and did not require the use of a cane. Dr. John Baughman, a CCI physician, also

21  rejected Mr. Martel's request for a cane because he did not find any muscle weakness or

22  nerve function degradation that would justify the issuance of a cane.

23       On January 7, 2000, Mr. Martel was examined by Dr. Rose Rabinov, a consulting

24  otalaryngologist and facial plastic surgeon. Dr. Rabinov indicated that: "I have explained

25  repeatedly to Mr. Martel that removing a wire from his maxillary will most likely <u>not</u>

26  alleviate his current [conditions]. I have explained to him that I may not even be able to

27  find a wire within the scar tissue." Dr. Rabinov concluded that an alternative to surgery

28  would be long term intravenous antibiotics.

1    On May 6, 2002, Mr. Martel submitted a disability accommodation request,

2    claiming that he was "mobility impaired" and needed to use a cane.  Dr. A. Loaiza

3    approved Mr. Martel's request and issued a cane to him.

4    In March of 2003, Mr. Martel was seen by Dr. Charles S. Nicholson, an oral

5    surgeon.  Dr. Nicholson removed a "fixation wire of left maxilla" upon Mr. Martel's

6    request.  Afterwards, Mr. Martel continued to complain of facial pains in 2004 and 2005.

7    On January 5, 2004, Mr. Martel filed this action under 42 U.S.C. §§ 1983, 1985

8    against the California Department of Corrections ("CDC"), Cal A. Terhune, the Drector

9    of the CDC, Tom L. Carey, a Warden at the CCI-Level IV, Dr. Andreasen, Mr. Donahue,

10   Dr. Dann, Dr. Moor, and Dr. Baughman.  On August 22, 2005, this Court dismissed

11   claims against Defendants Cal. A. Terhune, Tom Carey and the CDC without prejudice.

12   On December 27, 2005, Mr. Martel moved to file an amended complaint.  The

13   Amended Compliant omitted Mr. Martel's § 1985 claim and requested that Raj S. Sethi

14   and Tom Carey be added as defendants.  This Court granted Mr. Martel's motion to

15   amend but dismissed Dr. Sethi and Mr. Carey pursuant 28 U.S.C. § 1915(A).  The only

16   remaining cause of action is the § 1983 claim against Dr. Dann, Dr. Andreasen, Dr. Moor,

17   Dr. Baughman, and Mr. Donahue for alleged violations of Mr. Martel's Eighth

18   Amendment right against cruel and unusual punishment.

19   On October 26, 2006, Mr. Martel moved for partial summary judgment against

20   Defendants Andreasen, Donahue, Moor and Baughman.  The Defendants filed a cross-

21   motion for summary judgment against Mr. Martel on November 7, 2006.

**III**

23   Under Rule 56 of the Federal Rules of Civil Procedure, this Court will grant

24   summary judgment "if the pleadings, depositions, answers to interrogatories, and

25   admissions on file, together with the affidavits, if any, show that there is no genuine issue

26   as to any material fact and that the moving party is entitled to a judgment as a matter of

27   law."  "On summary judgment the inferences to be drawn from the underlying facts

28   contained in such materials must be viewed in the light most favorable to the party

1   opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  "The

2   moving party bears the initial burden to demonstrate the absence of any genuine issue of

3   material fact."  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).

4   "Once the moving party meets its initial burden, however, the burden shifts to the

5   non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific

6   facts showing that there is a genuine issue for trial."  *Id.* (internal quotation marks

7   omitted).

## IV

9       Mr. Martel's complaint alleges that "Defendants . . . [were] deliberat[ly]

10  indifferen[t] [toward] his serious medical needs[,] in violation of the Eighth Amendment

11  of the Constitution of the United States."  Defendants claim that this Court should grant

12  summary judgment in their favor because "Plaintiff's claims are simply disagreements

13  with his treating physicians over the appropriate course of treatment for recurrent

14  episodes of facial swelling and pain and his need for a cane due to a seizure disorder."

15  Defendants maintain that such "disagreement does not state a deliberate indifference

16  claim under the Eighth Amendment."  Defendants further claim that they are entitled to

17  qualified immunity.

18      The Supreme Court has instructed that state officials and municipalities are only

19  liable under § 1983 if there is, at minimum, an underlying constitutional tort.  *Monell v.*

20  *Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 691 (1978).  Here, Mr. Martel

21  is unable to show that the Defendants violated his constitutional rights under the Eighth

22  Amendment.

23      "The government has an obligation under the Eighth Amendment to provide

24  medical care for those whom it punishes by incarceration."  *Lopez v. Smith*, 203 F.3d

25  1122, 1131 (9th Cir. 2000) (en banc).  However, "not every breach of that duty is of

26  constitutional proportions."  *Id.*  The Ninth Circuit has held that "[m]ere medical

27  malpractice does not constitute cruel and unusual punishment."  *Hallett v. Morgan*, 296

28  F.3d 732, 744 (9th Cir. 2002).  "Instead, the Eighth Amendment is violated when prison

1 officials demonstrate deliberate indifference to serious medical needs." *Id.* at 744

2 (internal quotation marks omitted).  Prison officials's "conduct must constitute

3 unnecessary and wanton infliction of pain before it violates the Eighth Amendment." *Id.*

4      Mr. Martel contends that Drs. Dann, Moor, and Baughman acted with deliberate

5 indifference toward his facial pain because they each refused to remove the wire from the

6 left side of his face.  In *Jackson v. McIntosh*, the Ninth Circuit instructed that "a [§ 1983]

7 plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need

8 to pursue one course of treatment over another [is] insufficient, as a matter of law, to

9 establish deliberate indifference."  90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v.*

10 *Vild*, 891 F.2d 240, 242 (9th Cir.1989)).  The Court held in *Jackson* that the plaintiff

11 "must show that the course of treatment the doctors chose was medically unacceptable

12 under the circumstances, and the plaintiff must show that they chose this course in

13 conscious disregard of an excessive risk to plaintiff's health." *Id.* (internal citations

14 omitted).

15      Mr. Martel has failed to make such a showing here.  The facts, viewed in the light

16 most favorable to Mr. Martel, show that Drs. Dann, Moor, and Baughman rejected Mr.

17 Martel's requests for surgery to remove the wire after their evaluations of Mr. Martel's

18 condition.  Each doctor reached his or her conclusion, that Mr. Martel's facial pain should

19 be treated with medication and not surgery, based on their medical evaluation of the

20 relevant facts, including multiple X-Ray pictures and other physical examination results.

21 Mr. Martel has not provided any evidence to suggest that this course of treatment was

22 medically unacceptable.  Additionally, nothing in the record suggests that the doctors

23 acted with conscious disregard to Mr. Martel's health.  Mr. Martel admits in his motion

24 for partial summary judgment that "the delay in finding the actual cause of [his] facial

25 suffering was in large part due to the conflicting opinions given by prison physicals."

26 While Dr. Nicholson did remove the wire from Mr. Martel's face in 2003, Dr. Nicholson

27 did not conclude that it was medically unacceptable to not remove the wire.  The

28 difference in treatment pursued by Dr. Nicholson and Drs. Dann, Moor, and Baughman

amounts to nothing more than a difference of medical opinions. Thus, Mr. Martel has failed to show that Drs. Dann, Moor, and Baughman acted with deliberate indifference toward his facial pain.

Mr. Martel further contends that Dr. Andreasen and Mr. Donahue acted with deliberate indifference by recommending his transfer from the CMF to the CCI-Level IV. because the CCI-Level IV was not equipped to provide the medical care he needed. Dr. Andreasen and Mr. Donahue authorized Mr. Martel's transfer after doctors at the CMF concluded that his Hodgkin's lymphoma was in remission and that his facial pains required no additional surgery. Mr. Martel disagrees with these medical conclusions and speculates that the CCI-Level IV was medically ill equipped to treat him. However, he offers no evidence to support his speculation and conclusory statements. As discussed earlier, Mr. Martel's disagreement with the CMF doctors's medical opinions does not state an Eighth Amendment claim. *See Jackson*, 90 F.3d at 332. Additionally, Mr. Martel's speculation and conclusory allegations do not create a factual dispute for purposes of summary judgment. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment").

Mr. Martel also claims that Drs. Moor and Baughman acted with deliberate indifference by refusing to permit him to have a cane. Mr. Martel was permitted to use a cane while he was incarcerated at the CMF because, at the time, he experienced leg weakness due to seizures. When Mr. Martel was transferred to the CCI-Level IV, he informed Dr. Moor that he was not longer having seizures and that seizure medication was no longer required. Thus, Dr. Moor concluded that there was no longer a medical need for Mr. Martel to have a cane. Subsequently, Dr. Moor and Dr. Baughman repeatedly examined Mr. Martel and consistently found that he did not have a medical need for a cane. Mr. Martel's personal disagreement with Dr. Moor and Dr. Baughman's medical diagnosis does not state an Eighth Amendment claim. *See Jackson*, 90 F.3d at 332. Mr. Martel points out that, in 2002, Dr. Loaiza approved his request and issued him

1  a cane.  However, Dr. Loaiza did not conclude that the decisions to the contrary by Dr.

2  Moor and Dr. Baughman were medically unacceptable.  This again is nothing more than a

3  difference of opinion between the doctors, which does not state an Eighth Amendment

4  claim.  *See Jackson*, 90 F.3d at 332; *Sanchez*, 891 F.2d at 242 ("difference of opinion

5  does not amount to [] deliberate indifference").

6      Finally, Mr. Martel alleges that Defendants, at various times, "deliberately

7  misrepresented [his medical records]" and "interfered and deprived" him of access to

8  medical treatment.  There is no factual basis to support this allegation.  The record shows

9  that Mr. Martel was given access to medical treatment every time he asked for such.

10 While, at times, Mr. Martel may not have been granted permission to be treated by the

11 doctor of his choice or at the institution of his choice, such denials do not violate the

12 Eighth Amendment.  *See Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988) (holding

13 that transferring a prisoner from one facility to another does not violate the Eighth

14 Amendment because "the Constitution . . . does not guarantee to a prisoner the treatment

15 of his choice"); *Brownlow v. Chavez*, 871 F. Supp. 1061, 1064 (S.D. Ind. 1994) ("The

16 Eighth Amendment does not guarantee a prisoner's choice of a physician, a mode of

17 treatment or a place of treatment, nor does or could it guarantee a particular outcome or

18 level of comfort in the face of physical maladies.") (internal citations omitted); *Calloway

19 v. Contra Costa County Jail Correctional Officers*, No. C 01-2689 SBA, 2007 WL

20 134581, at *31 (N.D. Cal. Jan. 16, 2007) (rejecting "the proposition that a prisoner has an

21 Eighth Amendment right to receive treatment in the location or with the provider of his

22 choice").  In sum, there is no evidence to suggest that any of the Defendants acted in

23 anyway to falsify Mr. Martel's medical records or prevent him from receiving proper

24 medical care.

25     Because Mr. Martel is unable to prove that the Defendants violated his Eighth

26 Amendment rights, his § 1983 claim must fail.  There is no genuine issue as to a material

27 fact.  Therefore, Defendants' motion for summary judgment is therefore granted.

28

1    In accordance with the above, IT IS HEREBY ORDERED that:

2    1.    The Defendants' motion for summary judgment is granted.

3    2.    Mr. Martel's motion for partial summary judgment is denied.

4

5    DATED: August 7, 2007

6

7

8

9                                    /s/ Arthur L. Alarcón
                                     UNITED STATES CIRCUIT JUDGE
10                                   Sitting by Designation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28